## House v. Bank of Lewisport.

## Commonwealth v. Bank of Lewisport.

(Decided December 7, 1917.)

### Appeals from Hancock Circuit Court.

1. Corporations—Banks and Banking—Failure of Bank to File Statement—Effect Upon Contracts.—A banking corporation having filed with the Secretary of State a statement giving the names of two agents upon whom process could be served, as required by section 571 of the Kentucky Statutes, and before it begun to do business, the fact that it failed to file a subsequent statement naming a new agent for service of process after one of its former agents had died, and the other had removed from the county, did not make its subsequent contracts invalid or constitute any defense to an action by the bank to recover upon notes given for money loaned by the bank.

2. Corporations—Statement Giving Name of Agent Upon Whom Process May be Served—Venue of Penal Action.—A penal action to recover a fine from a corporation for doing business without having filed with the Secretary of State a statement giving the name of its agent upon whom process may be served, as required by section 571 of the Kentucky Statutes, must be brought in the county where the business was carried on.

W. P. SANDIDGE and G. D. CHAMBERS for Bank of Lewisport.

M. M. LOGAN, Attorney General, D. O. MYATT, Assistant Attorney General, and C. E. SMITH for Commonwealth.

BIRKHEAD & WILSON for J. W. House.

OPINION OF THE COURT BY JUDGE MILLER—Affirming in the first case and reversing in the second case.

This appeal involves the construction of section 571 of the Kentucky Statutes, which reads as follows:

"All corporations except foreign insurance companies formed under the laws of this or any other state, and

carrying on any business in this state, shall at all times have one or more known places of business in this state, and an authorized agent or agents thereat, upon whom process can be served; and it shall not be lawful for any corporation to carry on any business in this state, until it shall have filed in the office of the Secretary of State a statement, signed by its president or secretary, giving the location of its office or offices in this state, and the name or names of its agent or agents thereat upon whom process can be served; and when any change is made in the location of its office or offices, or in its agent or agents, it shall at once file with the Secretary of State a statement of such change; and the former agent shall remain agent for the purpose of service until statement of appointment of the new agent is filed; and if any corporation fails to comply with the requirements of this section, such corporation, and any agent or employe of such corporation, who shall transact, carry on or conduct any business in this state, for it, shall be severally guilty of a misdemeanor, and fined not less than one hundred nor more than one thousand dollars for each offense.''

The appellee, the Bank of Lewisport, a Kentucky corporation, complied with the statute by filing in the office of the Secretary of State, in 1895, a statement wherein it declared that the bank's principal office was at Lewisport, Hancock county, Kentucky, and that Tom B. Pell and B. II. Poindexter were its agents there for service of process.

Pell was president and Poindexter was cashier of the bank in 1895 when the statement was filed. In 1902 Poindexter resigned as cashier and moved to Owensboro, Ky., in the adjoining county, and about fourteen miles from Lewisport. Pell continued to live in Lewisport and to act as the president and the designated agent of the bank for service of process until his death on June 21, 1912.

After Poindexter moved to Owensboro he occasionally visited Lewisport, but had no business connection with the bank unless his former designation as agent for the service of process might be so considered. After the death of Pell in 1912, Poindexter continued to reside at Owensboro, but was frequently absent therefrom on business. But, Poindexter never resigned as such agent, nor was he removed, nor was any other agent appointed in his place or in the place of Pell, until the appointment of S. T. McGill on June 21, 1916.

On September 24, 1915, the Bank of Lewisport filed its action in the Hancock circuit court seeking to recover judgment from the appellant House, upon six promissory notes aggregating $5,188.75. Only the last three notes, aggregating $1,687.75, were executed after the death of Pell. By his answer House pleaded usury; and he further sought to defeat the collection of the notes upon the ground that the bank had failed to file in the office of the Secretary of State a new statement showing a change in its agent for the service of process required by section 571, *supra,* after the death of Pell in 1912.

A jury was waived and upon a trial of the case by the court the usury was excluded, but House's defense as above indicated was disregarded and judgment given against him. His appeal is the first case styled in the caption.

On July 29, 1916, the Commonwealth filed a penal action against the Bank of Lewisport in the Hancock circuit court seeking to recover a penalty of $1,000.00 from the bank upon the ground that it had been conducting its business in Hancock county without having filed in the office of the Secretary of State a statement giving the location of its place of business and its agent thereat upon whom process could be served, as is required by section 571, *supra.*

Being of the opinion that the offense, if any, had been committed in Franklin county, the county in which the certificate should have been filed, and that the Hancock circuit court was, therefore, without jurisdiction, the circuit court dismissed the penal action. The Commonwealth's appeal is the second case styled in the caption.

The cases were tried upon substantially the same facts, were argued together in this court, and will be disposed of in one opinion.

These appeals present a new question in this court. In Oliver v. Louisville Realty Co., 156 Ky. 628, and in other cases construing section 571 of the Kentucky Statutes, this court has held, in conformity with the language of the statute, that it is unlawful for any corporation to carry on any business in this state before it has filed in the office of the Secretary of State a statement giving the location of its office in this state and the name of an agent thereat upon whom process can be served; and, that any contract made by a corporation before it had filed its statement was void because it was made in vio-

lation of law. Fruin-Colnon Contracting Co. v. Chatterson, 146 Ky. 504, 40 L. R. A. (N. S.) 857; Hunter v. Big Four Auto Co., 162 Ky. 781.

These appeals, however, present a different question. Here the bank did fully comply with the statute in 1895; and certainly it was lawfully doing business from that date until Pell's death in 1912, in so far as the statute could affect that question. The question for decision, therefore, is this: Is the contract of a corporation made after the death or removal from the county of its agent for the service of process, void under section 571 of the Kentucky Statutes, where no new agent has been designated for the service of process? If a contract of this character is unlawful it cannot be enforced, under the well established principle that the courts will not afford relief to a violator of the law. But if there is no statutory prohibition upon the doing of business after the death or removal of the agent and before the appointment of a new agent, the contracts so made are not invalid, although the offender may be punished. House contends, and to succeed he must show, that his notes given for money borrowed after Pell's death were prohibited by the statute; and in support of this contention he relies upon that provision of section 571, *supra*, which provides that when any change is made in its agent the corporation shall at once file with the Secretary of State a statement of such change.

It is insisted that this language prohibits the corporation from doing business until it files another statement designating a new agent upon whom process can be served, thus bringing the case within the rule announced in Oliver v. Louisville Realty Co., *supra*. But the statute does not so declare; and, it is apparent from the context that it cannot be so construed, since the next clause in the statute expressly provides that when any change is made in the agent, the former agent shall remain agent for the service of process until a statement of appointment of the new agent is filed.

Section 571, *supra*, contains three general provisions covering a like number of subjects. First, it requires the corporation to have a place of business in the state and an agent thereat upon whom process can be served, expressly making it unlawful for a corporation to begin business in this state until it shall have filed with the Secretary of State the statement designating its office and agent. Secondly, if any change is made in its agent

the corporation must at once file with the Secretary of State a statement of such change, but the former agent remains agent for the purpose of service of process until the statement appointing the new agent is filed with the Secretary of State. And finally, should the corporation fail to comply with the statute it will be guilty of a misdemeanor and fined accordingly.

Laying aside for the moment the third general provision providing a punishment for failure to comply with the statute, it will be observed that the statute imposes two requirements: (1) that the corporation must file the statement before it can lawfully begin business; and, (2) that any change in the agent of the corporation for the service of process shall be shown by filing a new statement. But this last provision does not make it unlawful for the corporation to do business pending the filing of the new statement; on the contrary it expressly saves the case from the consequences of an omission to file the new statement, by providing that the former agent shall remain agent for the service of process until the new statement is filed. It is reasonably clear, therefore, that the statute never intended to declare as unlawful, contracts made between the death, resignation or removal of one agent and the appointment of another; and if the contract so made is not unlawful it will be enforced.

Moreover, the fact that the bank has always had at least one designated agent in Pell or Poindexter and had never attempted to change it before McGill's appointment in 1916, must not be overlooked. It is contended that since Poindexter never resigned, there was no such "change made in the agent" as required the appointment of a new agent. But as the decision of that question is not necessary in the disposition of House's appeal, and may become important under the proof that may appear in the penal action, we express no opinion upon the subject.

It was clearly the purpose of the statute to preserve both the agency and the business of the corporation during an interim between agencies, which must frequently occur. Can it be said that when the designated agent of a bank dies, it must close its doors until it can appoint a new agent?; or that in case the agent of a railroad company dies or removes from the county of his residence the company should stop its trains and cease doing all business until it can call a meeting of its direc-

tors, appoint a new agent, and certify that fact to the Secretary of State? Clearly not. But if appellant's contention be sound these results must follow. It entirely overlooks the distinction, clearly made by the statute, between business done by a corporation before any statement whatever has been filed and business done by a going concern after the death, resignation, or removal of its designated agent and before the appointment of another. The first character of business is prohibited and contracts made in such business are void. In the other case the breach of the statute is satisfied with a fine, which will have the desired effect of securing the appointment of a new agent.

The avowed purpose of the agency being to furnish a person upon whom process may be served, the operation of the statute will not be extended beyond what is reasonably necessary to accomplish that purpose. Moreover, the service of a summons is not confined to the agent thus appointed; it may be served on the persons designated in section 51 of the Civil Code of Practice. Paducah Cooperage Co. v. Commonwealth, 122 Ky. 755; Callahan Construction Co. v. Williams, 160 Ky. 814.

We conclude, therefore, that the contract of the bank in lending to House the money which it now sues to recover, was not rendered void by its failure to appoint an agent in place of Poindexter, and that the circuit court properly so ruled.

We cannot, however, concur in the finding of the circuit court that the offense, if any, was committed in Franklin county and not in Hancock county. The offense denounced by the statute does not consist in the failure to file the notice in Frankfort but in doing business in Hancock county without having filed the notice in Frankfort. This provision of the statute was construed in Commonwealth v. Grand Central Building & Loan Association, 97 Ky. 327. In that case the company was indicted and prosecuted in Franklin county for doing business when it had not filed the agency statement, and it was contended by the company that the venue of the case was in Campbell county, where the corporation did business. The Commonwealth, however, attempted to sustain the jurisdiction of the Franklin circuit court under section 976 of the Kentucky Statutes which conferred upon that court jurisdiction of all cases against public debtors and defaulters. This court, however,

overruled that contention and held that the jurisdiction was in the Campbell circuit court, saying:

"This provision is almost a literal copy of the former statute under the old constitution in force in Kentucky for more than forty years, which statute has been commonly referred to as the "fiscal statute," and the Franklin circuit court as the "fiscal court" of the state. But it had never been the practice under that statute, and by reason of same, to claim that it conferred any jurisdiction on that court to try criminal or penal prosecutions, for violations of the criminal or penal code of the state, whether by indictment or by penal action. The legislature must be presumed to have had knowledge of this uniform construction and practice under the former statute, and not to have contemplated any change by its re-enactment."

The rule has been adhered to in Commonwealth v. Remington Typewriter Co., 127 Ky. 184, and Commonwealth v. Morrell Ref. Car. Co., 129 Ky. 743. The Hancock circuit court, therefore, had jurisdiction of the case.

The judgment in the appeal of House is affirmed; the judgment in the appeal of the Commonwealth is reversed.