COMMONWEALTH of Kentucky, Appellant,

v.

Jimmie SIZEMORE and Steve Sizemore, Appellees.

Court of Appeals of Kentucky.

Dec. 15, 1972.

Ed W. Hancock, Atty. Gen., Richard E. Fitzpatrick, Asst. Atty. Gen., Frankfort, George E. Barker, Commonwealth's Atty., Lexington, for appellant.

Larry C. Allen, Baxter Bledsoe, Jr., London, for appellees.

CULLEN, Commissioner.

A prosecution was instituted in the Fayette Circuit Court against Jimmie Sizemore and Steve Sizemore, charging them with operating a coal mine in Clay County, Kentucky, without a license, in violation of KRS 351.175. That statute expressly provides: "Jurisdiction for such offenses shall lie in the Fayette Circuit Court." It was the opinion of the judge of the criminal division of the Fayette Circuit Court, however, that the statute could not validly vest "jurisdiction" in the Fayette Circuit Court over a criminal offense committed in Clay County, in view of the right granted by Section 11 of the Kentucky Constitution, to a defendant, to be tried by an impartial jury of the "vicinage." Accordingly, the judge entered an order declining to accept jurisdiction of the case and transferring it to the Clay Circuit Court. The Commonwealth has appealed from that order.

The contention of the Commonwealth is that the statute defines a two-part offense, one part of which is the *failure to obtain a license* from the Department of Mines and Minerals, whose office is in Fayette County; and, therefore, Fayette County is a proper "vicinage" since it is the place where part of the offense was committed.

■ We think the argument has no merit. See Kentucky Straight Creek Coal Co. v. Commonwealth, 304 Ky. 247, 200 S.W.2d 470. It is plain that the proscribed conduct is unlicensed mining; the obtaining of a license has no significance apart from the carrying on of mining operations.

It is our opinion, however, for the reason hereinafter stated, that the circuit judge erroneously determined that the statute violates Section 11 of the Kentucky Constitution.

The penalty provided by the statute is a fine of not less than $100 nor more than $300. That puts the offense in the category of a "petty" offense. See Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491; Annotation 26 A.L.R.2d 916.

In District of Columbia v. Clawans, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843, it was held that an offense punishable by imprisonment up to 90 days or by a fine up to $300 was not within the class of offenses for the trial of which a jury might be demanded as a matter of right under the Sixth Amendment to the United States Constitution.

■ This court has held that the right of trial by a jury of the vicinage, granted by Section 11 of the Kentucky Constitution, does not apply to petty offenses. Houk v. Starck, 251 Ky. 276, 64 S.W.2d 565; City of Mt. Sterling v. Holly, 108 Ky. 621, 57 S.W. 491.

■ It is clear, therefore, that the statute here in question does not violate Section 11 of the Kentucky Constitution.

The judgment is reversed with directions that the Fayette Circuit Court entertain jurisdiction of the prosecution.

MILLIKEN, PALMORE and REED, JJ., concur; STEINFELD, C. J., concurs in the result as he believes the provision of Section 11 of the Kentucky Constitution guaranteeing a trial by a jury of the vicinage is not violated. It is his opinion that the wording of KRS 351.175(4), the statute denouncing the offense with which appellant is charged, makes the failure to obtain a license a part of the offense. That failure occurred in Fayette County, the place where the license is required to be obtained. See 53 C.J.S. Licenses § 69, page 728.

OSBORNE, J., dissents by separate opinion in which HILL and NEIKIRK, JJ., join.

OSBORNE, Justice (dissenting).

I interpret the opinion of the majority of the court in this case as holding that Section 11 of our Constitution only preserves the right to a trial in the vicinage if the

accused is entitled to a jury trial. To state the matter another way, the majority opinion holds that the right to trial in the vicinage is not preserved by the Constitution unless the accused has the right to a jury trial. It would appear they are interpreting that Section of the Constitution to require that the jury be of the vicinage of the trial and not to require the trial itself to be conducted in the county or vicinage of the crime. I do not believe this to be sound.

It is a general rule of law that state legislatures do have the power to fix venue in criminal prosecutions at a place other than that where a crime is committed in the absence of a constitutional limitation, but where the Constitution limits the vicinage the legislature cannot change it. See 21 Am.Jur.2d, Criminal Law, § 402, p. 419:

"But where the constitution of a state guarantees to an accused a trial by a jury of the county in which the offense has been committed, the general rule is that a statute which permits the prosecution of the defendant in the courts of another county is void."

Section 11 of the Constitution of Kentucky provides as follows:

"In all criminal prosecutions the accused has the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor. He can not be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land; and in prosecutions by indictment or information, he shall have a speedy public trial by an impartial jury of the vicinage; but the General Assembly may provide by a general law for a change of venue in such prosecutions for both the defendant and the Commonwealth, the change to be made to the most convenient county in which a fair trial can be obtained."

It is my understanding from reading this section that the accused is given the following rights:

1. To be heard by himself and counsel.

2. To be advised of the nature of the cause against him.

3. To confront the witnesses face to face.

4. Compulsory process for obtaining witnesses.

5. Protection against self-incrimination.

6. Due process.

7. Speedy trial.

8. Trial by jury.

9. Trial in the vicinage.

I do not believe any of these rights is dependent upon any other, and more particularly I do not believe that the legislature in a criminal prosecution can change the vicinage once it is fixed by the Constitution. My conclusions are based upon an analysis of the cases cited in 76 A.L.R. 1034, Annotation—Crime—Place of Prosecution. See page 1036 where the rule is stated as follows:

"But where the Constitution of the state guarantees to an accused a trial by an impartial jury of the county in which the offense has been committed, it has generally been held that a statute giving jurisdiction of a prosecution to the courts of a county other than that in which the offense has been committed is void as denying to the offender the constitutional right of a trial in his county or vinage. Walls v. State (1877) 32 Ark. 565; Dempsey v. State (1894) 94 Ga. 766, 22 S.E. 57; State v. Moore (1916) 140 La. 281, 72 So. 965; Ex parte Slater (1880) 72 Mo. 102; State v. Mc-Graw (1885) 87 Mo. 161; State v. Hatch

(1887) 91 Mo. 568, 4 S.W. 502; State v. Smiley (1889) 98 Mo. 605, 12 S.W. 247; State v. Mispagel (1907) 207 Mo. 557, 106 S.W. 513; State v. Carroll (1909) 55 Wash. 588, 104 P. 814, 133 Am.St.Rep. 1047, 19 Ann.Cas. 1234; State v. Reese (1920) 112 Wash. 507, 192 P. 934, 11 A.L.R. 1018."

It is generally conceded that the word vicinage as used in state Constitutions and statutes contemplates county. We have so held. See Woosley v. Commonwealth, Ky., 293 S.W.2d 625. Further, it is generally conceded that the clause granting a right to trial by a jury of the vicinage requires that the trial itself be conducted at the site of the crime. The Supreme Court of the United States in Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), discusses by way of a review of history how this clause reached its present form as the Sixth Amendment to the United States Constitution. The pertinent parts of the opinion read as follows at p. 93–96, 90 S.Ct. at p. 1902:

"Provisions for jury trial were first placed in the Constitution in Article III's provision that '(t)he Trial of all Crimes . . . shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed.' The 'very scanty history (of this provision) in the records of the Constitutional Convention' sheds little light either way on the intended correlation between Article III's 'Jury' and the features of the jury at common law. Indeed, pending and after the adoption of the Constitution, fears were expressed that Article III's provision failed to preserve the common-law right to be tried by a 'jury of the vicinage.' That concern, as well as the concern to preserve the right to jury in civil as well as criminal cases, furnished part of the impetus for introducing amendments to the Constitution that ultimately resulted in the jury trial provisions of the Sixth and Seventh Amendments. As introduced by James Madison in the House, the Amendment relating to jury trial in criminal cases would have provided that:

" 'The trial of all crimes . . . shall be by an impartial jury of freeholders of the vicinage, with the requisite or unanimity for conviction, of the right to challenge, and other accustomed requisites . . . .' The Amendment passed the House in substantially this form, but after more than a week of debate in the Senate it returned to the House considerably altered. While records of the actual debates that occurred in the Senate are not available, a letter from Madison to Edmund Pendleton on September 14, 1789, indicates that one of the Senate's major objections was to the 'vicinage' requirement in the House version. A conference committee was appointed. As reported in a second letter by Madison on September 23, 1789, the Senate remained opposed to the vicinage requirement, partly because in its view the then-pending judiciary bill—which was debated at the same time as the Amendments—adequately preserved the common-law vicinage feature, making it unnecessary to freeze that requirement into the Constitution. 'The Senate,' wrote Madison: 'are (sic) . . . inflexible in opposing a definition of the locality of Juries. The vicinage they contend is either too vague or too strict a term; too vague if depending on limits to be fixed by the pleasure of the law, too strict if limited to the county. It was proposed to insert after the Juries, "with the accustomed requisites," leaving the definition to be construed according to the judgment of professional men. Even this could not be obtained . . . . The Senate supposes, also, that the provision for vicinage in the Judiciary bill will sufficiently quiet the fears which called for an amendment on this point.' The version that finally emerged from the Committee was the version that ultimately became the Sixth Amendment, ensuring an accused: 'the right to a speedy and public trial, by an impartial

jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . .."

It has also been held that the word vicinage corresponds with the territorial jurisdiction of the court in which the venue of the crime is laid. See Howell v. Commonwealth, 187 Va. 34, 46 S.E.2d 37, (1948), wherein the matter is stated as follows at p. 40–41:

> "We have no statute in Virginia prescribing the venue for criminal trials, but section 8 of our Constitution guarantees to an accused 'a speedy trial by an impartial jury of his vicinage.' In Karnes v. Commonwealth, 125 Va. 758, page 762, 99 S.E. 562, at page 563, 4 A. L.R. 1509, it was held that 'the true construction of the word "vicinage" as used in the Constitution is that it corresponds with the territorial jurisdiction of the court in which the venue of the crime is laid.' "

The Supreme Court of Michigan in People v. Lee, 334 Mich. 217, 54 N.W.2d 305, acknowledged that this clause had been properly left out of the last Constitution of Michigan in order. to permit the legislature to fix the venue of criminal cases. In the course of the opinion at 308 the court states:

> "The Constitution of Michigan of 1835 contained the provision in art. 1, § 9, 'the right of trial by jury shall remain inviolate', and in art. 1, § 10, 'In all criminal prosecutions, the accused shall have the right to a speedy and public trial by an impartial jury of the vicinage'.

> "The Constitution of 1850, art. 6, § 28, omitted the words 'of the vicinage' and the present Constitution, 1908, art. 2, § 9, likewise does not have the words 'of the vicinage' qualifying a jury to try a criminal case. The evident purpose of leaving out of the Michigan constitution the words 'of the vicinage' is to permit the legislature some latitude in legislating as to venue of criminal cases."

The court accepted the proposition that the above language fixed the site of the trial in the county where the crime was committed.

From the foregoing it appears to have been almost universally held by all courts dealing with the subject that once vicinage is fixed by a state Constitution in language similar to that found in Section 11 it cannot thereafter be altered or changed by the legislature.

For the foregoing reasons, I respectfully dissent.

HILL and NEIKIRK, JJ., join in this dissent.